**IN THE DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SCOTT E. CASEY, *et al.* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | **Civil Action No. 3:11-cv-03043-O-BK** |
| TOYOTA MOTOR ENGINEERING AND | § | |
| MANUFACTURING NORTH AMERICA, | § | |
| INC., *et al.* | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION IN LIMINE AND BRIEF IN SUPPORT THEREOF**

Defendants Toyota Motor Engineering and Manufacturing North America, Inc.; Toyota Motor Manufacturing, Indiana, Inc.; Toyota Motor Corporation; and Toyotetsu America, Inc. (collectively, "Defendants") file this Motion in Limine.   Defendants respectfully request that, before the voir dire examination of the jury panel has begun, before any opening statements are made to the jury, and before the introduction of any evidence, the Court instruct Plaintiffs and all of Plaintiffs' witnesses to refrain from making any mention through interrogation, voir dire examination, opening statement, arguments or otherwise, either directly or indirectly, concerning any of the matters hereinafter set forth, without first approaching the bench and obtaining a ruling from the Court outside the presence and hearing of all prospective jurors and the jurors ultimately selected to try this case, with regard to the following:

1.      **UNINTENDED AND/OR SUDDEN ACCELERATION**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding unintended and/or sudden acceleration issues involving Toyota vehicles generally, or any evidence that suggests or implies that the subject 2010 Toyota Highlander ("Highlander") unintendedly or suddenly accelerated at the time of the accident at issue in this case.   Plaintiffs have represented that they will not present any

evidence on topics covered by the Toyota Unintended Acceleration Multi-District Litigation currently pending in the United States District Court for the Central District of California as Cause Number 8:10-ml-02151-JVS-FMO, styled *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales, Practices and Products Liability Litigation.*  This would, by necessity, include any of the recalls related to unintended acceleration, any fines paid by Toyota to NHTSA as a result of unintended acceleration issues, the settlement of a portion of the claims in the MDL, any cases that are part of the MDL, and any other litigation involving allegations of unintended acceleration.   Plaintiffs have affirmatively stated that this case "has absolutely nothing to do with sudden acceleration or unintended acceleration."  Plaintiffs' Motion to Vacate Conditional Transfer Order at 1, appx. at 1.  Plaintiffs have admitted they "are not claiming that the [Highlander] experienced an unintended acceleration at the time of the accident," they "are not claiming that the [Highlander] was defective due to a lack of brake override," and they "are not claiming the subject vehicle was defective due to a lack of brake throttle override."  Plaintiffs' First Amended Answers to Defendant Toyota Motor Corporation's Request for Admissions at 3-4, appx. at 15-16.  They have also admitted they are not asserting defect claims that implicate vehicle components typically associated with unintended acceleration claims, including the electronic throttle control system, accelerator pedal, and floor mat.  *Id.*  Plaintiffs' experts agree that this case does not involve unwanted or unintended acceleration, and that the reason the Highlander reached the speed it was travelling prior to the accident was due to operator input by Dawna Casey.  Deposition of Stephen Syson at 18:7-13, appx. at 18; Deposition of Dr. David Renfroe at 28:19-24, appx. at 31.  Moreover, Plaintiffs have previously stipulated that they would not proceed on any claim for unintended acceleration or sudden acceleration.  *See* Order dated June 24, 2013, ECF No. 81, appx. at 39-40; Stipulation, ECF No. 48, appx. at 41-43; *see also* Pls. Resp. Defs' Mot. Summ. J. at 6, ECF No. 67, appx. at 52.

Plaintiffs and Plaintiffs' witnesses should not, therefore, be allowed to make any mention of, make reference to, or put on any evidence that the Highlander was accelerating or the throttle was open for any reason other than the intentional application of the accelerator pedal

by Dawna Casey.  This includes any evidence or statements that suggest or imply that the Highlander's throttle remained open for unknown reasons, that the engine was in a high or full power setting without attributing that setting to Casey's accelerator pedal application, that the vehicle was accelerating for unknown reasons, that the throttle remained open or the engine was in a high or full power position while Casey was applying the brake with her right foot, or that in any other way implicates the throttle was open or the engine was in a high or full power setting without Casey simultaneously engaging the accelerator pedal.   Any and all such reference, mention, or evidence is contrary to the Plaintiffs' stated position in this cause and is therefore inadmissible by Plaintiffs' own prior admissions, and is irrelevant, because it does not go to any fact of consequence in determining this action.  Fed. R. Evid. 401, 402.  Moreover, any such reference, mention, or evidence should be prohibited because the probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *Id.* at 403.  Therefore, this evidence should be excluded.

## 2.   <u>EVENT DATA RECORDER NOT VALID OR RELIABLE</u>

Neither Plaintiffs nor their experts should be allowed to offer testimony that the Highlander's Event Data Recorder ("EDR") is not valid or reliable.  First, Plaintiffs' experts are not qualified to testify regarding the EDR's validity.  Neither Dr. David Renfroe ("Renfroe") nor Mr. Stephen Syson ("Syson") appear to have any experience in the design or development of EDRs.   *See* Curriculum Vitae of Dr. David Renfroe, appx. at 63-70; Curriculum Vittae of Stephen Syson, appx. at 71-75.

Moreover, Plaintiffs' experts have no basis to support any such opinion.  They have done no testing or analysis demonstrating that the EDR is invalid or unreliable.  While two of Plaintiffs' experts believe there are inconsistencies or anomalies in the data, neither has analyzed those alleged inconsistencies or anomalies, identified the cause, proposed a solution, nor offered any sort of defect theory with respect to the EDR.  Deposition of Dr. David Renfroe at 71:10-74:2, appx. at 32-35; Deposition of Stephen Syson at 85:9-86:20, appx. at 24-25.   Renfroe

specifically has not done anything to evaluate or try to assess any alleged inconsistencies in the EDR data.  Deposition of Dr. David Renfroe at 74:9 – 74:12, appx. at 35.  Renfroe has not conducted any evaluation of the subject EDR or any exemplar EDR.  *Id.* at 74:13-17, appx. at 35.  Renfroe is not aware of or familiar with any information regarding the validity of the EDR. *Id.* at 74:18-75:7, appx. at 35-36.  Similarly, Mr. Syson has not done anything to determine the reliability of the EDR.  Deposition of Stephen Syson 77:12-17, appx. at 22.  Syson's recollection of the testing that has been performed on the EDR indicated that the data recorded by the EDR was "quite good."  *Id.* at 77:18-78:22, appx. at 22-23.  And in fact, the EDR in the Highlander has been validated by the National Highway Traffic Safety Administration.

As Plaintiffs' experts lack sufficient data or facts, and have not applied any reliable principles or methods to analyze the validity and reliability of the EDR data, they should not be allowed to offer testimony that the Highlander's EDR is not valid or reliable, or that the EDR is defective in any respect.  Fed. R. Evid. 702.

### 3.    OTHER ACCIDENTS OR CLAIMS INVOLVING ALLEGEDLY SIMILAR PRODUCTS

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or offer evidence regarding any accident, incident, claim, lawsuit or notice of claim or lawsuit prior to or subsequent to the date of the accident in question involving any vehicle allegedly designed, manufactured, imported, sold, or distributed by any Toyota entity, or by other automobile manufacturers.  This includes, but is not limited to, the matters contained in Plaintiffs' exhibits 293 and 294, as well as any other documents Defendants produced in response to Plaintiffs' discovery requests seeking such information. *See, e.g.*, Representative Sample from Exhibits 9 and 10 to Deposition of Barry Hare, appx. at 76-84.  None of those incidents are substantially similar to the allegations in this case.

First, any evidence of other incidents or claims is hearsay and would deprive Defendants of the right of cross-examination in this case.    Fed. R. Evid. 801, 802.

Second, there is no or insufficient information available with regard to the type or nature of the products involved and with regard to the conditions and circumstances under which such

other incidents may have occurred.  Unless first shown out of the jury's presence to involve the same or a substantially similar product and to have occurred under the same or substantially similar circumstances, any such other incident would not be relevant to any issue in this case, and the introduction of such matters would be highly prejudicial to Defendants.   Such evidence would tend to mislead and confuse the jury, and would be unduly prejudicial insofar as Plaintiffs' only objective in introducing this evidence would be to suggest that such similar incidents are evidence of a defect in the subject vehicle or that all of Defendants' vehicles are dangerous or defective. *See also Armstrong v. Nissan Motor Co.*, 145 S.W.3d 131, 138 (Tex. 2004).  Further, no information would be available with regard to the conduct of the injured persons or some other third person with respect to any such other accident.  Fed. R. Evid. 401, 402 and 403.

Finally, Toyota anticipates that each side will have limited time to present its case and to raise other cases would require trials within this trial, which makes it virtually impossible to fully and properly address evidence of other alleged incidents.   Therefore, Toyota's ability to fully present its defense may be prejudiced.  *See Johnson v. Ashby*, 808 F.2d. 676 (8th Cir. 1987). There is simply not enough time to present this jury with evidence regarding the subject accident and other incidents.  Fed. R. Evid. 403.  Further, evidence of other accidents would violate Defendants' rights to due process and equal protection of the law.

## 4.    RECALLS

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or offer evidence regarding any alleged recalls, service campaigns, or other similar matters applicable to Toyota, Lexus or Scion vehicles, or vehicles by any other manufacturer. There are no recalls or service campaigns applicable to Plaintiffs' defect claims in this case. This includes the recall related to the Toyota Venza cited by Syson in his deposition.   Syson admitted that the recalled Venza part is not common to the Highlander.  Deposition of Stephen Syson at 47:20-48:5, appx. at 19-20.  Any evidence of any recalls, service campaigns, or other similar matters would be irrelevant, unfairly prejudicial, and calculated to confuse and mislead the jury.  Fed. R. Evid. 402, 403.

5.    **BIOMECHANICS**

Plaintiffs' experts should not be allowed to offer testimony regarding biomechanics, which is the science of injury mechanisms, i.e. the ability of the human body to withstand forces, the forces necessary to cause injury to an individual and the kinematics or movements of an individual in response to and during the application of forces.  Syson does not hold himself out to be a biomechanic and has done no biomechanical analysis.  Deposition of Stephen Syson at 65:15-22, appx. at 21.   Dr. William Rohr admits that biomechanics are outside of his area of expertise.  Deposition of William Rohr, M.D. at 16:24-17:3, appx. at 86-87.  Dr. Renfroe likewise testified that he is not a biomechanic.  Deposition of Dr. David Renfroe at 150:17-151:3, appx. at 37.  Similarly, none of the other experts designated by Plaintiffs have expertise in biomechanics. Plaintiffs' Expert Disclosure of July 11, 2012, appx. at 92-97.  As none of Plaintiffs' experts have specialized knowledge, skill, experience, or education in biomechanics, they should not be allowed to offer any such testimony, including any opinions regarding how or when during the accident Casey sustained her basilar skull fracture.  Fed. R. Evid. 702.

6.    **CURTAIN SHIELD AIRBAG ALTERNATIVE DESIGNS**

Plaintiffs' experts should not be allowed to offer testimony regarding their proposed alternative designs for the Highlander's curtain shield airbag.   Renfroe and Syson offered alternative designs for the curtain shield airbag, but neither has demonstrated through testing or otherwise that any of these alternative designs were economically or technologically feasible at the time the Highlander was designed and developed, or that they would have prevented Casey's death, as required under Texas law.  Thus these opinions are unsupported, unreliable and should not be admitted at trial.

Neither Dr. Renfroe nor Mr. Syson has identified any feasible alternative design for the curtain shield airbag that could feasibly have been incorporated into the 2010 Toyota Highlander and that would have prevented Casey's death.  In his report Dr. Renfroe suggests all belts to seat and split side curtain airbags would be safer alternative designs.  July 6, 2012 Report of Dr. David Renfroe at 24, appx. at 121.  Syson has proposed a dividing location in the bag, a

depression in the bag, integrated belts to seat, and moving the bag so that it deploys out of the top of the door.  Deposition of Stephen Syson at 128:20-130:5, appx. at 27-29.  Neither Renfore nor Syson, however, has demonstrated either how such designs could have feasibly been incorporated into the design of the 2010 Toyota Highlander or that they would have prevented Dawna Casey's death.

Neither Dr. Renfroe nor Mr. Syson has identified any feasible alternative materials that could have feasibly been used for the curtain shield airbag in the 2010 Highlander and that would have prevented Casey's death.  In his supplemental report, Dr. Renfroe states "[t]here were tear resistant materials available for the side curtain airbag at the time this vehicle was manufactured and sold."  November 5, 2012 report of Dr. David Renfoe at 6, appx. at 124-131.  Dr. Renfroe does not, however, identify what those materials are or whether it was technologically or economically feasible to use them in the Highlander.  *See id.*  Mr. Syson also refers to the material selection for the curtain shield airbag in his supplemental report, but the report does not identify any alternative materials and certainly does not demonstrate that any such materials were technologically or economically feasible.  *See* November 6, 2012 report of Stephen Syson, appx. at 132-137.  And neither expert has provided any support for the opinion these materials would have made a difference in the accident at issue in this case.

As Plaintiffs' experts lack sufficient data or facts and have not applied any reliable principles or methods to analyze their proposed alternative designs for the curtain shield airbag, they should not be allowed to offer any such testimony.  Fed. R. Evid. 702.

7.    <u>**OPINION THAT DAWNA CASEY DID NOT HAVE A SEIZURE**</u>

Plaintiffs' witnesses should not be allowed to offer testimony that Dawna Casey did not have a seizure at the time of the accident.  Plaintiffs' medical expert Dr. Rohr has opined that Dawna Casey did not have a seizure on the occasion in question, but has no valid basis for offering that opinion.  July 5, 2012 report of Dr. William Rohr, M.D. at 2, appx. at 139.

A proffered basis for Dr. Rohr's opinion that Casey did not experience a seizure is that, based on his interpretation of the eyewitness deposition testimony, Casey was making

purposeful movements and maneuvers while operating the Highlander, and that such purposeful movements would not have been possible if she had suffered a seizure. *Id.* at 3, appx. at 140. In his deposition, however, after admitting that a neurologist would be better qualified to answer whether a person experiencing a partial complex seizure could make purposeful movements, Dr. Rohr testified that it is possible that someone experiencing a partial complex seizure could do so. Deposition of William Rohr, M.D. at 45:19–46:3, appx. at 90-91. There is a gap in Dr. Rohr's analysis because his opinion is based in part on the premise that, if Casey had suffered a seizure, then she would not have been able to make purposeful movements. But his own testimony contradicts that basis for his opinion, in that he admits that a person experiencing a seizure could in fact still make purposeful movements. July 5, 2012 report of Dr. William Rohr, M.D. at 3, appx. at 140.

Another purported basis for Dr. Rohr's opinion is that Casey was taking a therapeutic level of lamotrigine to manage her seizures. Dr. Rohr, however, is not a neurologist. Deposition of William Rohr, M.D. at 24:23-25, appx. at 88. Dr. Rohr is not a neuropharmacologist. *Id.* at 24:11-12, appx. at 88. Additionally, he has not prescribed seizure medication in over thirty years, and only has done so when he was an intern. Deposition of William Rohr, M.D. at 25:1-17, appx. at 89. He has no basis for suggesting that Casey could not have experienced a seizure while taking the prescribed level of lamotrigine.

Dr. Rohr is not qualified by knowledge, skill, experience, training or education to testify as to whether or not Dawna Casey experienced a seizure at the time of the accident. Moreover, his analysis is unreliable, as demonstrated by the contradiction in his testimony. Thus, neither he, nor any of Plaintiffs' witnesses should be allowed to offer testimony that Dawna Casey did not have a seizure at the time of the accident. Fed. R. Evid. 702.

## 8.   OPINIONS AND SPECULATIVE TESTIMONY OF EYEWITNESSES

Plaintiffs should not be allowed to offer or solicit opinions or speculative testimony from accident witnesses as to Casey's mental state during the accident sequence, including what she was trying to do while operating the Highlander in the events leading up to the accident and her

intentions in maneuvering the vehicle. For example, during her deposition, eyewitness Michelle Abruzzo provided various opinions as to what was happening with the Highlander and Casey during the events leading up to the accident. She testified "my opinion – fact might be different – looked like she couldn't slow her car down," and "I – again, opinion, it's almost like she knew she could not slow the car down." Deposition of Michelle Abruzzo at 20:24-25, 21:25-22:7, 50:2-6, 53:19 - 54:13, 54:25-55:21, appx. at 148-154. In addition, over defense counsel's objection, Plaintiffs asked eyewitnesses whether it appeared Casey was making "purposeful" movements as she drove the Highlander.

Such testimony is speculative and is not helpful in determining any fact issue because the jury is able to reach its own conclusion based on the non-speculative, non-opinion testimony of the eyewitnesses, making the opinion testimony irrelevant. Fed. R. Evid. 701; *U.S. v. Stadtmauer*, 620 F.3d 238, 262-63 (3d Cir. 2010). Moreover, the probative value of any such testimony is substantially outweighed by the danger of unfair prejudice to Defendants. Fed. R. Evid. 403.

## 9.   FORCE REQUIRED TO BEND AND CAUSE OF BENDING OF BRAKE PEDAL

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or offer any evidence regarding the amount of force that is necessary to bend the Highlander's brake pedal, or that Dawna Casey bent the Highlander's brake pedal. Plaintiffs' expert Stephen Syson is of the opinion that the brake pedal was bent by Dawna Casey, which is founded upon his opinion of the force required to bend the pedal. Syson's opinion of the force required to bend the brake pedal is speculative and not based on sufficient facts or data. Consequently, Syson's opinion that Casey bent the brake pedal should also be excluded.

Mr. Syson testified in his deposition that it is "usually somewhere around 800 to 1200 pounds applied to the brake pedal pad to cause the brake pedal arm to bend." Deposition of Stephen Syson at 104:24-25, appx. at 26. Syson also testified that he had not "measured it or done a test on it for this vehicle… and it's usually about a factor of safety of three to four over and above the maximum force required to apply the brakes, and usually that's somewhere

around 2 to 300 pounds." *Id.* at 104:20-24, appx. at 26.  Syson's own testimony demonstrates that his opinion in this regard is unreliable, speculative and not based upon sufficient facts or data.  His opinion is based upon his general understanding of how much force it "usually" takes to apply the brakes of a vehicle, and the "usual" factor of safety incorporated into brake pedal arm design.  This alone would be an insufficient basis to support such testimony as there is nothing connecting the purported usual force or factor of safety and the vehicle in question.  Moreover, Syson has not cited any data or facts that support his hypothesis that two to three hundred pounds of force is the usual amount required to apply brakes, or that vehicle manufacturers usually design brake pedal arms with a factor of safety of three to four.  Additionally, Syson failed to perform any analysis, measurement or testing of the force it would take to bend the brake pedal arm in question.    Therefore, this evidence is unreliable, unfairly prejudicial and should be excluded.  Fed. R. Evid. 702.  As Syson's opinion that Casey bent the Highlander's brake pedal is based upon his opinion of the force required to bend the pedal, Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence that Dawna Casey bent the brake pedal.  *Id.*

## 10.   <u>PRIOR STATEMENTS BY DEFENDANTS NOT PREVIOUSLY IDENTIFIED</u>

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or offer any evidence of prior statements of Defendants that have not previously been identified.  Defendants specifically asked for this information in discovery, and Plaintiffs failed to produce or identify any documents in response to their request, but merely referred to all documents Defendants have produced in this case.  Plaintiffs' Response to TMS' First Request for Production No. 71, appx. at 158.  Despite the lack of a specific response, it appears Plaintiffs may intend to use Defendants' prior statements at trial.

At the deposition of James Walker, for example, Plaintiffs inquired as to Mr. Walker's familiarity with past positions Toyota has taken with respect to EDR data.  Deposition of James Walker, Jr. at 12:12-15:17, appx. at 160-61.  Allowing Plaintiffs to introduce any such evidence not previously identified or disclosed would operate as an unfair surprise to Defendants and

would permit an abuse of the discovery process, prohibiting Toyota from a fair and adequate opportunity to meet and rebut the issues raised by such evidence. Fed R. Civ. P. 37.

Wherefore, premises considered, Defendants respectfully pray this court grant the points outlined in this motion in limine, and such other and further relief to which Defendants may show themselves to be entitled.

Respectfully submitted,

*/s/ Kurt C. Kern*
**KURT C. KERN**
State Bar No. 11334600
**SUZANNE H. SWANER**
State Bar No. 90001631
**JUDE T. HICKLAND**
State Bar No. 24065416

**BOWMAN AND BROOKE LLP**
2711 N. Haskell Avenue, Suite 650
Dallas, TX  75204
Telephone (972) 616-1700
Telecopier (972) 616-1701

**ATTORNEYS FOR TOYOTA DEFENDANTS**

## CERTIFICATE OF CONFERENCE

This is to certify that the undersigned counsel has conferred with Christopher S. Ayres, counsel of record for Plaintiffs on August 19, 2013, and Plaintiffs are opposed to the relief sought by this Motion.

*/s/ Jude T. Hickland*
**Jude T. Hickland**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this filed pleading is being served upon all counsel of record through the Court's ECF delivery system, as provided by the Local Rules at or shortly after the time and date of filing.

*/s/ Jude T. Hickland*
**Jude T. Hickland**