**IN THE DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| SCOTT E. CASEY, *et al.* §<br>§<br>*Plaintiffs,* §<br>§<br>v. §<br>§<br>TOYOTA MOTOR ENGINEERING AND §<br>MANUFACTURING NORTH AMERICA, INC., *et* §<br>*al.* §<br>§<br>*Defendants.* § | Civil Action No. 3:11-cv-03043 |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Toyota Motor Engineering and Manufacturing North America, Inc.; Toyota Motor Manufacturing, Indiana, Inc.; Toyota Motor Corporation; and Toyotetsu America, Inc. (collectively, "Defendants") and file this, their Motion for Judgment as a Matter of Law, and for such would show as follows:

**I.**
**Standard for Judgment as a Matter of Law**

Judgment as a matter of law is appropriate with respect to an issue if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on that issue." Fed. R. Civ. P. 50(a)(1). This occurs when "the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Coffel v. Stryker Corp.*, 284 F.3d 625, 630 (5th Cir. 2002) (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir. 1994)) (internal quotation marks omitted).

In considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In reviewing the record as a whole, the court "must disregard all evidence favorable to the moving party that the jury is not required to

believe." *See Ellis v. Weasler Engineering, Inc.*, 258 F.3d 326, 336-37 (5th Cir. 2001). That is, the court must give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.*   There is no evidence of essential elements of the Plaintiffs' claims. Thus, the Motion should be granted.

## II.
## Judgment Should be Granted on Plaintiffs' Misrepresentation Claims

In order to establish a misrepresentation cause of action against Defendants, Plaintiffs must establish that (1) Defendants made a material misrepresentation; (2) the misrepresentation was false; (3) Defendants knew that it was false at the time or recklessly made it without any knowledge of the truth and as a positive assertion; (4) Defendants made the representation with the intent that it be acted upon; (5) the representation was in fact relied upon; and (6) Plaintiffs' suffered an injury. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

Plaintiffs have presented no evidence to support any of the elements of misrepresentation.  They not only have failed to produce evidence that a misrepresentation was ever made, but also have failed to show reliance by the Plaintiffs on any statement made by Defendants. Scott Casey has made clear that his only involvement in obtaining the vehicle was choosing between a Dodge Nitro and a Toyota Highlander.  (Casey Dep. 29:5-8)  He did not choose the Highlander based on any statements made by Defendants but rather because of the available leg room.  (*Id.* 29:9-10)  He did not see any advertising related to the Highlander.  (*Id.* 29:18-20)  Plaintiffs did not know how much the vehicle costs or what the vehicle was equipped with.  When asked if Defendants' personnel told Plaintiffs anything they believed to be untrue, Mr. Casey replied, "We were *told nothing.*" (*Id.* 33:2-5)

Because Plaintiffs have produced no evidence that they relied on *any* statements made by Defendants, Plaintiffs have failed to establish the essential elements of their

misrepresentation claim.  Accordingly, Defendants respectfully request that the Court grant their Motion for Judgment as a Matter of Law in its favor.

## III.
## Judgment Should be Granted on Plaintiffs' Marketing Defect Claims

A marketing defect claim requires that the lack of an adequate warning render the product unreasonably dangerous.  *Wright v. Ford Motor Co.*, 508 F.3d 263, 274-75 (5th Cir. 2007).  To prevail on their marketing defect claim, Plaintiffs must establish the following: (1) a risk of harm inherent in the product or which may arise from the intended or reasonably anticipated use of the product; (2) the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed; (3) the product contains a marketing defect; (4) the absence of a warning renders the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn must constitute a causative nexus in the product user's injury.  *Id.*  Plaintiffs have presented no evidence of any element of a marketing defect claim.  They have presented no evidence of the intended or reasonably anticipated use of the product.  They have presented no evidence Defendants knew or should have reasonably foreseen the risk of harm at the time the product was marketed. They have presented no evidence that the absence of any specific warning renders the product unreasonably dangerous.  Judgment as a matter of law should be granted on Plaintiffs' marketing defect claims.

## IV.
## Judgment Should be Granted on Plaintiffs' Design Defect Claims

Under Texas law, "[t]o recover for a products liability claim alleging a design defect, a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery."  *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (alteration in original) (quoting *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)) (internal quotation marks omitted); *see also* Tex. Civ. Prac. &

Rem. Code § 82.005(a).

Texas courts have consistently required expert testimony to prove a design defect claim. *See, e.g.*, *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 136-38 (Tex. 2004). Expert testimony has specifically been required because proving a defect in design often involves technical matters beyond the general experience of the jury. *See id.* at 137. This requirement extends to establishing a safer alternative design was available. *See, e.g.*, *Hunter v. Ford Motor Co.*, 305 S.W.3d 202, 207-10 (Tex. App.—Waco 2009, no pet.) (requiring plaintiffs "to present expert testimony on design defect, including safer alternative design").

**A.     Seat Belt System**

Plaintiffs have presented no evidence that the Highlander's seat belt system was defectively designed.  Plaintiffs have provided no evidence and no expert testimony that the Highlander's seat belt system design was defective and unreasonably dangerous.  Plaintiffs have presented no evidence and no expert testimony of a safer alternative design.

**B.     Roof Structure**

Plaintiffs have presented no evidence that the Highlander's roof structure was defectively designed.  Plaintiffs have provided no evidence and no expert testimony that the Highlander's roof structure design was defective and unreasonably dangerous.  Plaintiffs have presented no evidence and no expert testimony of a safer alternative design.

**C.     Handling and Stability**

Plaintiffs have presented no evidence that the Highlander's handling and stability characteristics were defectively designed.  Plaintiffs have provided no evidence and no expert testimony that the Highlander's handling and stability design was defective and unreasonably dangerous.  Plaintiffs have presented no evidence and no expert testimony of a safer alternative design.

**D.     Glazing**

Plaintiffs have presented no evidence that the Highlander's glazing was defectively

designed.  Plaintiffs have provided no evidence and no expert testimony that the Highlander's glazing design was defective and unreasonably dangerous.  Plaintiffs have presented no evidence and no expert testimony of a safer alternative design.

### E.    Braking System

Though Plaintiffs have alleged that both manufacturing and design defects in the brake system may have caused the accident in this case, they have not identified a *specific* defect, as required by Texas law, to support either claim.  *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007) ("a specific defect must be identified by competent evidence and other possible causes must be ruled out").  Dr. Renfroe could not say whether Mrs. Casey pumped the brakes or applied them only once.  His opinion is that if she pumped the brakes, then the alleged defective design in the Highlander's braking system caused the accident and Casey's death.  Dr. Renfroe suggests that alternatively, if Mrs. Casey applied the brakes only once, then a manufacturing defect caused the accident and Casey's death.  In *Ridgway*, the Texas Supreme Court held that expert testimony that does not pinpoint a specific defect—like Renfroe's testimony—is insufficient to raise a fact issue.  *See Ridgway*, 135 S.W.3d at 600-02 ("The Ridgways produced no direct evidence of the fire's cause. . . .  Ridgway's affidavit establishes only that a fire occurred, [which] is insufficient to raise a fact issue.").

Plaintiffs' inability to identify the specific defect that caused the accident—and  their inability to rule out other potential causes of the accident like a manufacturing defect—precludes them from recovering based on a design defect claim.  *See, e.g.*, *id.*; *Armstrong*, 145 S.W.3d at 137 ("[The Texas Supreme Court has] held that a specific defect must be identified by competent evidence and other possible causes must be ruled out."); *Ridgway*, 135 S.W.3d at 600-02.

Renfroe further opines that the parking brake was engaged at the time of the accident.  He claims that the earliest photographs of the parking brake indicate it was engaged, but conceded on cross examination that is not correct.  The first available photo of the parking

brake demonstrates that it was not engaged in this accident.  Renfroe additionally points to burnishing of the parking brake pad, but admitted under cross examination that he could not say when the burnishing occurred and that it could be from someone taking off with the parking brake engaged.

Moreover, Renfroe simply speculates that Casey applied the brake in time to make a difference in this accident.  He admits that he does not know when the brake was applied in the sequence.  Therefore, he cannot opine to a reasonable degree of engineering certainty that any brake application by Casey was done in time to change the outcome of this accident.

## F.      Curtain Shield Airbag

Plaintiffs have presented no legally sufficient evidence in support of their claim of a safer alternative design for the curtain shield airbag.  Renfroe has failed to provide the requisite risk-benefit analysis for a safer alternative design.  The bare statements of Dr. Renfroe fail to demonstrate how such designs could be incorporated, how they would impact the utility of the vehicle, what it would cost, what additional hazards would be created, or conduct any other risk-benefit analysis.  A design is not a safer alternative if under other circumstances it would impose an equal or greater risk of harm. *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 196 (5th Cir. 2006); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998).  The Plaintiffs must show that the safety benefits from the proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety.  *Hodges*, 474 F.3d at 196; *Uniroyal*, 977 S.W.2d at 337.  For example Plaintiffs have not addressed any of the following with respect to their proposed alternate designs:

- Whether the unspecified "tear resistant materials" for the curtain shield airbag could be folded and packaged into the space allotted in the vehicle for the curtain shield airbag;
- Whether the unspecified "tear resistant materials" would result in a heavier curtain shield airbag;
- The effect the unspecified "tear resistant materials" for the curtain shield airbag would have on inflation time, trajectory and force of the bag during deployment;

- The effect the "tear resistant materials" for the curtain shield airbag would have on the risk of injury to out of position occupants;
- Whether a vehicle equipped with the alternative designs, if implemented, could meet all applicable Federal Motor Vehicle Safety Standards;
- How any utility gained from an all-belts-to-seat design compares to the increased risk of injury in rear-end collisions due to the increased rigidity of the seat back that accompanies implementation of the design.

Plaintiffs have therefore failed to establish that the proposed design would not have substantially impaired the vehicle's utility. *Smith v. Louisville Ladder Co.*, 237 F.3d 515, 520 (5th Cir. 2001).

Plaintiffs' failed to demonstrate economic feasibility of the alternative designs. While Plaintiffs need not demonstrate the actual manufacturing cost associated with the alternative design, they must provide legally sufficient evidence of economic feasibility. *Brochtrup v. Mercury Marine*, 426 Fed. Appx. 335, 339 (5th Cir. 2011). *Brochtrup* does not stand for the proposition that Plaintiffs do not need to establish economic feasibility, but that they need not show "the cost of implementing the alternative designs into the manufacturing process." *Id.* In that case, Plaintiffs' expert's testimony that the total cost to install the proposed guard and shield to an already manufactured boat was $400. *Id.* The Court rightly held that was evidence of economic feasibility. *Id.* In this case, Plaintiffs have provided no evidence of the economic feasibility of the alternative designs by either showing the cost of implementing the designs into the manufacturing process, or otherwise.

Similarly Plaintiffs have not presented any evidence to demonstrate any quantifiable decreased risk of injury. Under Texas law, a safer alternative design must if actually used in reasonable probability have prevented or significantly reduced the risk of claimant's personal injury. *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 196 (5th Cir. 2006); Tex. Civ. Prac. & Rem. § 82.005. Dr. Renfroe provided no analysis of what effect the proposed alternative designs would have on the likelihood of injury.

Moreover, Renfroe's opinion that the material for the airbag was a design defect was never timely and properly disclosed. Instead he merely stated the proposition as a conditional

statement.   If Defendants' experts are correct and the airbag deflated, then the material selection was defective.   Such an opinion is not offered to a reasonable degree of engineering certainty and is legally insufficient evidence of a design defect.

**V.**
**<u>Judgment Should be Granted on Plaintiffs' Manufacturing Defect Claims</u>**

Under Texas law, a manufacturing defect exists when a single product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous.   *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).   In contrast, a design defect claim alleges that the defect is found in all of the products manufactured based on the same specifications.   *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1040 (5th Cir. 2011).   To recover for a products liability claim alleging a design defect, Plaintiffs must prove (1) the product was defectively designed so as to render it unreasonably dangerous and (2) a safer alternative design existed.   *Id.*   Under either theory, Plaintiffs must also prove the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of Plaintiffs' injuries.   *See id.*; *Purcel v. Advanced Bionics Corp.*, No. 3:07–CV–1777–M, 2010 WL 2679988, at *8 (N.D. Tex. June 30, 2010) (citing *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 41-42 (Tex. 2007)).

Regardless of whether the claim is structured as a manufacturing defect or design defect, Texas courts have consistently disposed of cases in which the evidence merely indicated the presence of a "malfunction."   *See, e.g.*, *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 147 (Tex. 2004); *Bass v. Gen. Motors Corp.*, 491 S.W.2d 941, 947 (Tex. Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.) ("It is fundamental that in order to recover in a cause of action based upon strict liability or negligence, more than the accident itself must be proved.").   Instead, courts require objective proof of the specific alleged defect that caused an injury.   *See, e.g.*, *Ledesma*, 242 S.W.3d at 42-43; *Ridgway*, 135 S.W.3d at 600-02.   As spoken by the Texas Supreme Court, "a *specific defect must be identified* by competent evidence and

other *possible causes must be ruled out.*" *Ledesma*, 242 S.W.3d at 42 (emphasis added) (quoting *Armstrong*, 145 S.W.3d at 137) (internal quotation marks omitted).

For example, in *Ridgway*, the Court held that the plaintiffs' expert opinion was not definitive enough to raise a genuine issue of material fact of a manufacturing defect. *See Ridgway*, 135 S.W.3d at 600-02. Plaintiffs had alleged that a manufacturing defect in the engine compartment of their truck caused the vehicle to catch fire. *Id.* Specifically, their expert "suspected" that a malfunction of the electrical system in the engine compartment caused the accident. *Id.* Although he suggested that disassembling the vehicle might yield a more definitive conclusion, plaintiffs pursued no further investigation. *Id.* Because the expert did not disassemble the vehicle, he could neither identify the specific problem nor eliminate all portions of the fuel system as possible causes. *Id.* The Texas Supreme Court held that "[b]ecause [the expert] could not rule out part of the fuel system as a possible cause and because there [was] no proof that identified a defect in the truck at the time it left the manufacturer, [the expert's opinion was] not sufficient to raise a fact issue." *Id.* In other words, the occurrence of the fire, by itself, was not enough to support their manufacturing defect claim. *See id.*

The requirement of specific identification of a defect and objective proof is intrinsic to the nature of Texas strict products liability law. Without identification of the specific deviation, the jury would be invited to find liability based on *speculation* as to the cause of the incident in issue instead of finding liability because the deviation was the *actual* cause as required by the elements of each strict products liability claim. *See Ledesma*, 242 S.W.3d at 42. Furthermore, "[i]f juries were generally free to infer a product defect and injury causation from an accident or product failure alone, without any proof of the specific deviation," expert testimony—which the Texas Supreme Court has recognized as generally required—"would hardly seem essential." *Id.* Thus, a party alleging a manufacturing or design defect must identify a specific defect before pursuing their strict products liability claims. *See id.*

A.     **Seat Belt System**

Plaintiffs have presented no evidence that the Highlander's seat belt system was defectively manufactured.  Plaintiffs have provided no evidence and no expert testimony that the Highlander's seat belt system deviated from its planned output or that any such deviation rendered the Highlander defective and unreasonably dangerous.

**B.**     **Roof Structure**

Plaintiffs have presented no evidence that the Highlander's roof structure was defectively manufactured.  Plaintiffs have provided no evidence and no expert testimony that the Highlander's roof structure deviated from its planned output or that any such deviation rendered the Highlander defective and unreasonably dangerous.

**C.**     **Handling and Stability**

Plaintiffs have presented no evidence that the Highlander's handling and stability system was defectively manufactured.  Plaintiffs have provided no evidence and no expert testimony that the Highlander's handling and stability system deviated from its planned output or that any such deviation rendered the Highlander defective and unreasonably dangerous.

**D.**     **Glazing**

Plaintiffs have presented no evidence that the Highlander's glazing was defectively manufactured.  Plaintiffs have provided no evidence and no expert testimony that the Highlander's glazing deviated from its planned output or that any such deviation rendered the Highlander defective and unreasonably dangerous.

**E.**     **Braking System**

Though Plaintiffs have alleged that both manufacturing and design defects in the brake system may have caused the accident in this case, they have not identified a *specific* defect, as required by Texas law, to support either claim.  *See id.*  Plaintiffs' inability to produce competent evidence identifying a specific defect in the brake system and ruling out other possible causes is fatal.  *See Ledesma*, 242 S.W.3d at 42.  Dr. Renfroe could not say whether Mrs. Casey pumped the brakes or applied them only once.  His opinion is that if she pumped the brakes, then the

alleged defective design in the Highlander's braking system caused the accident or Dawna Casey's death. Dr. Renfroe suggests that alternatively, if Mrs. Casey applied the brakes only once, then a manufacturing defect caused the accident and Casey's death. In *Ridgway*, the Texas Supreme Court held that expert testimony that does not pinpoint a specific defect—like Renfroe's testimony—is insufficient to raise a fact issue. *See Ridgway*, 135 S.W.3d at 600-02 ("The Ridgways produced no direct evidence of the fire's cause. . . . Ridgway's affidavit establishes only that a fire occurred, [which] is insufficient to raise a fact issue."). Further, Renfroe concedes that in order to identify a specific manufacturing defect one would have to disassemble the brake system, which he admitted he has not done.

As discussed earlier, liability for a manufacturing defect cannot be based on generalized statements that an accident happened without objective proof of the *cause* of the alleged malfunction. *See Armstrong*, 145 S.W.3d at 137. Like in *Armstrong* where the Court stated, "[T]he mere occurrence of an unintended acceleration incident is no evidence that a vehicle is defective," the mere occurrence of an alleged brake malfunction is no evidence that the Highlander was defective. *See id.*

In describing the manufacturing defect that Renfroe asserts may have existed, his basic argument is that *if* Casey applied the brakes continually, *then* the vehicle by design should have stopped, *but* because it did not stop, there *may* have been a manufacturing defect. When the Texas Supreme Court was confronted with a similar lack of definitiveness in *Ridgway*, it held that the expert's testimony established only that the fire had occurred. *Ridgway*, 135 S.W.3d at 600-02. The expert had determined where the fire originated but could only speculate as to what actually caused the fire. *Id.* Just as the expert in that case had not disassembled the vehicle to present direct evidence of the cause, Renfroe and Syson have also failed to further investigate Plaintiffs' brake system to determine the specific defect. Without an identified specific defect, Plaintiffs have only shown that an accident occurred. *See Ridgway*, 135 S.W.3d at 600-02. They have otherwise failed to establish that a manufacturing defect was present in

the Highlander when it left the manufacturer and that the defect caused the accident.  *See, e.g.*, *id.*; *Ledesma*, 242 S.W.3d at 42; *Armstrong*, 145 S.W.3d at 137.

Renfroe further opines that the parking brake was engaged at the time of the accident. He claims that the earliest photographs of the parking brake indicate it was engaged, but conceded on cross examination that is not correct.  The first available photo of the parking brake demonstrates that it was not engaged in this accident.  Renfroe additionally points to burnishing of the parking brake pad, but admitted under cross examination that he could not say when the burnishing occurred and that it could be from someone taking off with the parking brake engaged.

Moreover, Renfroe simply speculates that Casey applied the brake in time to make a difference in this accident.  He admits that he does not know when the brake was applied in the sequence.  Therefore, he cannot opine to a reasonable degree of engineering certainty that any brake application by Casey was done in time to change the outcome of this accident.

**F.    Curtain Shield Airbag**

Plaintiffs have presented no evidence that the curtain-shield airbag in the 2010 Highlander at issue deviated from the specifications or planned output.  They allege that because the curtain-shield airbag did not remain inflated for six seconds during the rollover, there was a manufacturing defect. But there is no specification for the curtain-shield airbag requiring this inflation period under the circumstances of this accident. They base their allegation on a statement by Defendant expert Mr. Motoki Shibata that curtain-shield airbags with rollover sensors are "designed to maintain the bag pressure for *approximately* six seconds." (Shibata Dep. 99:1-3) But Mr. Shibata clarified that there is not a uniform design specification for the length of time it should take a curtain-shield airbag to deflate because the particular time period would depend on the type of force applied.  (*Id.* 99:11-14)

In a situation where glass tears through the airbag and increases the speed of the reduction of pressure in the airbag, such events are not considered to be malfunctions. (*Id.*

100:19-21) According to Mr. Shibata, a more rapid reduction of pressure does not mean the complete elimination of the protection function. (*Id.* 101:5-9) Thus, even if the airbag in this case deflated due to a tear, that event does not indicate that the curtain-shield airbag in this 2010 Highlander "deviate[d], in its construction or quality, *from the specifications or planned output* in a manner that render[ed]  it unreasonably dangerous." *See Ridgway*, 135 S.W.3d at 600.

Moreover, the Plaintiffs have presented no evidence that any alleged manufacturing defect in the curtain shield airbag rendered the Highlander unreasonably dangerous.   As conceded on cross examination by Dr. Renfroe, Defendants were not required to include curtain shield airbags in the Highlander.

**VI.**
**Judgment Should be Granted on Plaintiffs' Gross Negligence Claim**

Judgment should also be granted on all of Plaintiffs' claims for exemplary damages because Plaintiffs cannot make a showing sufficient to establish the existence of essential elements of their gross negligence claim.  Exemplary damages are authorized under the Texas Civil Practice and Remedies Code when the claimant proves by clear and convincing evidence that the harm results from fraud, malice, or gross negligence.  Tex. Civ. Prac. & Rem. Code § 41.003(a); *Dillard Department Stores v. Silva*, 148 S.W.3d 370, 372-73 (Tex. 2004).  Plaintiffs allege gross negligence as the basis for their claim for exemplary damages.  Plaintiffs have not presented legally sufficient evidence of essential elements of gross negligence, and judgment should therefore be awarded on their exemplary damages claims.

Plaintiffs have failed to present legally sufficient evidence of essential elements of their gross negligence claim.  In order to constitute gross negligence, an act must, when viewed objectively from the standpoint of the actor at the time of its occurrence, involve an extreme degree of risk, considering the probability and magnitude of harm to others.  Tex. Civ. Prac. & Rem. Code § 41.001(11); *Columbia Med. Ctr. Las Colinas v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2012); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).  "Extreme risk" is not "a

remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to Plaintiff."  *Columbia Med.*, 271 S.W.3d at 248; *Mobil Oil*, 968 S.W.2d at 921. Plaintiffs have not made a sufficient showing that the Highlander posed such an extreme risk.

Plaintiffs do not allege that the purported defects in this case have been the cause of any other accidents or injuries.  In fact, their argument against this case's transfer to the Federal MDL demonstrates their own belief that this case does not involve a defect in the Highlander that is likely to cause serious injury to operators and occupants of 2010 Toyota Highlanders generally.  Plaintiffs simply cannot make a sufficient showing that any purported defect with the Highlander presents a likelihood of serious injury.

Gross negligence also requires that at the time of the occurrence, the defendant have actual subjective awareness of the risks involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others.   Tex. Civ. Prac. & Rem. Code §41.001(11); *Columbia Med.*, 271 S.W.3d at 248; *Mobil Oil*, 968 S.W.2d at 921.  To the extent the Highlander even posed such a risk, which Defendants deny, the Defendants did not have any awareness of the risk and Plaintiffs have present no evidence of same.

Accordingly, Defendants respectfully request that the Court grant their Motion for Judgment as a Matter of Law and enter Judgment is their favor, and for such other and further relief to which they may show themselves to be entitled.

Respectfully submitted,

/s/ Kurt C. Kern
**KURT C. KERN**
State Bar No. 11334600
**SUZANNE H. SWANER**
State Bar No. 90001631
**JUDE T. HICKLAND**
State Bar No. 24065416

**BOWMAN AND BROOKE LLP**
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Main: 972-616-1700
Fax: 972-616-1701

**ATTORNEYS FOR DEFENDANTS**


## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September, 2013, a true and correct copy of the foregoing instrument was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure.

R. Jack Ayres, Jr.
Christopher S. Ayres
AYRES LAW OFFICE, P.C.
4350 Beltway Drive
Addison, TX 75001
csayres@ayreslawoffice.com
*Attorneys for Plaintiffs*

Craig D. Cherry
HALEY & OLSON, P.C.
Triangle Tower, Suite 600
510 North Valley Mills Drive
Waco, TX 76710
ccherry@haleyolson.com
*Attorneys for Plaintiffs*


/s/ Jude T. Hickland